**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEITH EDWARDS,

        Plaintiff,

v.

NEW JERSEY HUMAN SERVICES, et al.,

        Defendants.

Civil Action No. 12-5524 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants New Jersey Department of Human Services[1] ("DHS"), State of New Jersey ("State"), and Sergeant Stephen Sexton's ("Sexton") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 39.) Plaintiff Keith Edwards ("Plaintiff") opposed (ECF No. 42), and Defendants replied (ECF No. 43). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

**I.    Undisputed Material Facts[2]**

"In May 2010, [Sexton] of the [DHS] police encountered [P]laintiff . . . on the grounds of Hagedorn Psychiatric Hospital." (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 1,

---

[1] Improperly pled as "New Jersey Human Services."

[2] As Plaintiff failed to provide enumerated responses to Defendants' Statement of Undisputed Material Facts as required under Local Civil Rule 56.1(a), the Court deems Defendants' SUMF undisputed unless specifically addressed in Plaintiff's Statement of Material Facts in Dispute. (*See* Pl.'s Opp'n Br. 4-5, ECF No. 42.)

ECF No. 39-1.) "Plaintiff was at Hagedorn to visit his mother, which he did at least once a week." (*Id.* ¶ 2.) "Plaintiff routinely drove a four door car with tinted windows when he went to Hagedorn in 2010." (*Id.* ¶ 3.) Because "[t]here were no gates to get into Hagedorn, [P]laintiff just drove right in[to] the parking area where he parked his car." (*Id.* ¶ 4.)

During the May 2010 encounter, Plaintiff alleges that Sexton accused him of "being a trespasser."[3] (Pl.'s Statement of Material Facts in Dispute ("SMFD") ¶ 1, ECF No. 42.)[4] Defendants dispute the accusation, but do not provide an alternative reason for Sexton's encounter with Plaintiff. (Defs.' Resp. to Pl.'s SMFD ¶ 1, ECF No. 43-1.) According to Plaintiff, he "told . . . Sexton that his mother was a patient [at Hagedorn] and that [he was] 'going to visit [his] mother.'" (Pl.'s SMFD ¶ 2.) Plaintiff further alleges that: "Sexton said it will be obstruction of justice and I will be placed under arrest if I attempt to walk towards that door," and that Sexton followed by stating "[y]ou're under arrest, you're under arrest. Get your hands up. Get your hands up. You're under arrest." (*Id.*) According to Plaintiff, "Sexton then said 'When you come up here, your kind is not welcome.'" (*Id.* ¶ 3.) Plaintiff later testified that he interpreted "your kind" to refer to his race because he "always seem[ed] to be the only black person visiting up there.'" (*Id.*)

"Sexton did not touch [P]laintiff during the May 2010 interaction." (Defs.' SUMF ¶ 5.) Additionally, "Sexton did not file any charges against [P]laintiff as a result of the May interaction."

---

[3] Plaintiff also alleges that Sexton "exhibit[ed] racial discrimination and animus stating [to] [Plaintiff,] an African American[,] [that] 'his kind was not wanted there at [Hagedorn].'" (Pl.'s SMFD ¶ 1.) Defendants deny this alleged fact and note that Plaintiff's citation to the record does not contain the quote attributed to Sexton. (Defs.' Resp. to Pl.'s SMFD ¶ 1.) While Defendants are correct that the citation is inaccurate, the cited testimony appears on a different page of the deposition transcript. (*See* Defs.' Ex. A (Edwards Dep.) 54:1-10.)

[4] Because Plaintiff's SMFD does not contain enumerated paragraphs, the Court cites to each paragraph in the order in which they appear.

2

(*Id.* ¶ 6.) "Following the May interaction, [P]laintiff continued to visit his mother at Hagedorn at least once a week." (*Id.* ¶ 7.) "Plaintiff did not have any encounters with . . . Sexton or any other members of the DHS police again until September 4, 2010." (*Id.* ¶ 8.)

"On September 4, 2010, . . . Sexton stopped [P]laintiff, who was in the process of leaving Hagedorn at the time." (*Id.* ¶ 9.) "The location of the stop was an area [P]laintiff regularly drove through on his visits." (*Id.* ¶ 10.) "The stop took place shortly after [P]laintiff travelled through an intersection controlled by a stop sign." (*Id.* ¶ 11.) "Sexton pulled his police car behind [P]laintiff's vehicle at the side of the road, got out, and approached [P]laintiff's vehicle." (*Id.* ¶ 12.) "Plaintiff recognized . . . Sexton from their interaction in May." (*Id.* ¶ 13.) "Sexton asked [P]laintiff for his license, registration and insurance." (*Id.* ¶ 14.) "Sexton stated that [P]laintiff went through the stop sign, and [P]laintiff denied it." (*Id.* ¶ 15.)[5]

"Sexton returned to his police car, and [P]laintiff got out of his vehicle to make a phone call."[6] (*Id.* ¶ 16.) Next, "Sexton got out of his police car and went to [P]laintiff, and there was an interaction between the two of them that resulted in . . . Sexton using Oleoresin Capsicum ('OC Spray') on [P]laintiff and [P]laintiff being on the ground."[7] (*Id.* ¶ 17.) Plaintiff testified that his

---

[5] Plaintiff further alleges that: "I had my license in my wallet. I said to the officer for my safety, is it okay if I reached into my dashboard or glove compartment and retrieve the additional document that you're requesting." (Pl.'s SMFD ¶ 5.) Defendants deny "as stated." (Defs.' Resp. to Pl.'s SMFD ¶ 5.)

[6] Plaintiff alleges that Sexton frisked him, and that Plaintiff "brought his cell phone up to his ear [and] said in a loud manner, mouthing his words, 'I'm calling my lawyer.'" (Pl.'s SUMF ¶ 6.) Defendants denied "as stated," and "note[d] that the citations for this paragraph do not appear to refer to any part of the record for the motion." (Defs.' Resp. to Pl.'s SUMF ¶ 6.) While Defendants are correct that the citation is inaccurate, the cited testimony appears on a different page of the deposition transcript. (*See* Defs.' Ex. A (Edwards Dep.) 78-21-79:6.)

[7] Plaintiff alleges: that he was "OC'd by Sexton despite being compliant"; that he was "on his knees and he was helped up by Lou Freeman"; and that "Sexton jumped on top of [Plaintiff]." (Pl.'s SMFD ¶ 7.) Defendants denied "as stated," and "note[d] that the citations for this paragraph

3

"eyes were on fire" and he "couldn't see anything. (Pl.'s SMFD ¶ 8.) Plaintiff further alleged that he couldn't breathe and that he was "confused, devastated, frustrated, injured[, and in disbelief]." (*Id.* ¶¶ 8-9.)

"Another DHS police officer arrived at the scene." (Defs.' SUMF ¶ 18.) "Plaintiff was handcuffed and placed in the vehicle of the second police officer." (*Id.* ¶ 19.) "Neither of the officers struck or kicked [P]laintiff in any way." (*Id.* ¶ 20.) "Plaintiff was taken to a police station where the second officer took him to the bathroom to splash water on his eyes." (*Id.* ¶ 21.) "Plaintiff complained of trouble breathing and emergency medical services were called." (*Id.* ¶ 22.) "Plaintiff was transported to Hunterdon Medical Center by emergency medical services personnel. The second officer went with them." (*Id.* ¶ 23.) "The restraints on [P]laintiff were removed at the hospital." (*Id.* ¶ 24.)

"Plaintiff was in the emergency room for a couple of hours, where he was treated for a sprained wrist and a cut on his hand, in addition to his eyes. He cannot remember which wrist." (*Id.* ¶ 25.) "Towards the end of the emergency room visit, . . . Sexton arrived, gave [P]laintiff some documents, and [P]laintiff was released." (*Id.* ¶ 26.) "Plaintiff is not claiming that he currently has any physical problems as a result of the incident." (*Id.* ¶ 28.) "During the two months following the incident, [P]laintiff saw two psychologists or psychiatrists a total of ten to fifteen times. He has not gotten any kind of medical treatment since then." (*Id.* ¶ 29.) "Plaintiff is not claiming any lost wages as a result of the incident." (*Id.* ¶ 30.)

---

do not appear to refer to any part of the record for the motion, except for the final citation to [P]laintiff's deposition transcript." (Defs.' Resp. to Pl.'s SMFD ¶ 7.) While Defendants are correct that the citation is inaccurate, the relevant testimony appears in the deposition on a different page. (*See* Defs.' Ex. A (Edwards Dep.) 87:5-89:4.)

4

"As a result of the September 4, 2010, interaction with [P]laintiff, . . . Sexton charged [P]laintiff with two motor vehicle offenses and two disorderly persons offenses: having tinted windows without medical authorization contrary to N.J.S.A. 39:3-75.1, failing to obey a stop sign in violation of N.J.S.A. 39:4-144, obstructing the administration of the law contrary to N.J.S.A. 2C:29-1a and resisting arrest under N.J.S.A. 2C:29-2a(1). (*Id.* ¶ 31.) "On May 21, 2013, following a trial in the Municipal Court for the Borough of Bernardsville, the Hon. Miles S. Winder, III, J.M.C., found [P]laintiff guilty of all the charges except for the tinted windows charge under N.J.S.A. 39:3-75.1." (*Id.* ¶ 32.) The Municipal Court dismissed the tinted windows charge because Sexton charged Plaintiff under the incorrect statute. (Defs.' Ex. C, at 5-6, ECF No. 39-5; Defs.' Moving Br. 21-22.) "Plaintiff appealed the Municipal Court's decision to the Superior Court of New Jersey, Law Division – Criminal Part, Somerset County. On February 3, 2014, the Hon. Robert B. Reed, J.S.C., again found [P]laintiff guilty of failure to obey a stop sign and obstructing the administration of the law, but found [P]laintiff not guilty of resisting arrest." (Defs.' SUMF ¶ 33.)

## II. **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 447 U.S. at 248. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 447 U.S. at 248).

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Anderson*, 447 U.S. at 250. If the non-moving party fails to

> make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be "no genuine [dispute] of material fact," [because] a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### III. Parties' Positions

#### A. Eleventh Amendment

Defendants argue that the State, DHS, and Sexton, in his official capacity, are entitled to Eleventh Amendment Sovereign Immunity. (Defs.' Moving Br. 11, ECF No. 39-2.) First, Defendants argue that because the State has not consented to suit in federal court, the Complaint must be dismissed as to all Defendants. (*Id.* at 13.) Next, Defendants argue that they are not "persons" for the purpose of 42 U.S.C. § 1983. (*Id.* at 13-14.) Specifically, Defendants assert that state agencies and officials "acting in their official capacity" are not "persons" under Section 1983. (*Id.* at 14.) Therefore, according to Defendants, Counts Two through Five should be dismissed as they all arise under Section 1983. (*Id.*)

In response, Plaintiff cites *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for the proposition that local governments[8] can be held liable under Section 1983 if a "deprivation of a constitutional right . . . resulted from a 'policy, regulation or decision officially adopted by the governing body or informally adopted by custom." (Pl.'s Opp'n Br. 6-7, ECF No. 42 (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).) Plaintiff argues that Sexton's "actions and inactions . . . give rise to a genuine question of material fact[] whether the State or [DHS] maintained a policy or custom of failing to train its officers' protocols, guidelines and procedures for traffic stops or use of force and subsequent arrest of Plaintiff." (*Id.* at 7.) Plaintiff further argues that where training is deficient, "decision makers can be said to have deliberately chosen a program that will cause violations of constitutional rights." (*Id.*)

### B. Probable Cause for Arrest and Prosecution

Defendants next argue that Count One of the Complaint must be dismissed because Plaintiff's claims for false arrest, false charges, and illegal imprisonment "challeng[e] the validity of the criminal convictions against [Plaintiff] and [because] there was probable cause for . . . Sexton to arrest and charge him." (Defs.' Moving Br. 15.) Defendants assert that the claims fail under federal law because a "valid outstanding criminal judgment serves as a bar to most civil claims" under Section 1983. (*Id.*) Defendants argue that the only exception to this general bar is if a plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." (*Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).) Defendants argue that: Count One

---

[8] As none of the Defendants are municipalities, the Court finds Plaintiff's reliance on *Monell* immaterial to the analysis and does not address this argument further.

7

implies the invalidity of the underlying convictions because they arise from Plaintiff's alleged innocence; and Plaintiff fails to sufficiently allege an exception under *Heck*. (*Id.* at 17-18.) Additionally, Defendants add that Count One must be dismissed because Sexton had probable cause to arrest Plaintiff. (*Id.* at 19.)

In opposition, Plaintiff focuses on the lack of probable cause and asserts that it is a factual issue appropriate for the jury. (Pl.'s Opp'n Br. 10.) Plaintiff argues that Sexton and DHS's conduct violated his procedural due process rights and that his allegations of false arrest, false charges, and false imprisonment arising from the absence of probable cause are sufficient to survive summary judgment. (*Id.* at 9.) Additionally, Plaintiff argues that his claims for excessive force should survive summary judgment because he has established that Sexton sprayed Plaintiff with OC without provocation. (*Id.* at 10.)

### C. Qualified Immunity[9]

Defendants argue that Sexton is entitled to qualified immunity. (Defs.' Moving Br. 26.) Defendants assert that as long as Sexton had probable cause, then qualified immunity is triggered and the claims for false arrest, false imprisonment, and malicious prosecution must be dismissed. (*Id.* at 26-28.) Defendants further argue that Plaintiff's claim against Sexton for Excessive Force must also be dismissed under qualified immunity. (*Id.* at 28.) Defendants assert that Sexton's conduct satisfies the Fourth Amendment's "reasonableness" test, thus requiring dismissal under qualified immunity. (*Id.* at 28-32.)

Plaintiff responds that qualified immunity is unavailable where a constitutional violation has occurred. (Pl.'s Opp'n Br. 8.) Plaintiff argues that Sexton did not have probable cause to

---

[9] Plaintiff also argues that qualified immunity does not apply to the State and DHS, but the Court omits these arguments because they are immaterial to the Court's decision to dismiss the State and DHS pursuant to the Eleventh Amendment. (*See* Pl.'s Opp'n Br. 12-13.)

8

arrest him, which was in violation of Plaintiff's constitutional rights, and that the "right to be free from false arrest is clearly an established right." (*Id.*) Specifically, Plaintiff argues that Sexton had no justifiable reason to handcuff, arrest, and spray Plaintiff because he did not pose any threat. (*Id.* at 11.) Thus, Plaintiff argues that qualified immunity does not shield Sexton from individual liability for damages, and that the issue of excessive force is a fact-specific question for the jury. (*Id.* at 8-11.)

### D. Selective Enforcement

Defendants argue that Plaintiff's claim against Sexton for Selective Enforcement of the Law should be dismissed because Plaintiff fails to show a discriminatory effect or a discriminatory purpose. (Defs.' Moving Br. 32.) Defendants argue that Plaintiff fails to show that Sexton treated Plaintiff differently because of his race. (*Id.* at 35-36.)

Plaintiff responds that Sexton had previously made comments that were suggestive of racial prejudice, and that those comments in conjunction with the lack of probable cause to arrest Plaintiff are sufficient to demonstrate selective enforcement. (Pl.'s Opp'n Br. 14.)

### E. State Law Claim for Damages for Pain and Suffering

Finally, Defendants argue that Plaintiff's state law claims for damages for pain and suffering must be dismissed under the New Jersey Tort Claims Act. (Defs.' Moving Br. 36.) Defendants assert that Plaintiff fails to meet the "threshold for recovery of damages for pain and suffering," which requires "objective medical evidence that the injury is permanent." (*Id.* at 37 (quoting *Brooks v. Odom*, 150 N.J. 395, 402-03 (1997).) Plaintiff does not respond to this argument.

9

## IV. Discussion

### A. Eleventh Amendment Sovereign Immunity

States are shielded from suit in federal courts by the Eleventh Amendment, which has been interpreted to "bar[] all private suits against non-consenting States in federal court." *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008). "[T]here are only three narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by an Act of Congress; (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of the City of Newark*, 344 F.3d 335, 345 (3d Cir. 2003). Moreover, Section 1983 does not abrogate states' immunity. *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). The Supreme Court has "made clear that the Constitution does not provide for federal jurisdiction over suits against non-consenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Absent waiver, therefore, neither a state nor agencies under its control may be subjected to lawsuits in federal court. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Sovereign immunity applies even if a state is not a named party to the action, "as long as the state is the real party in interest." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see also Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 324 (3d Cir. 2002). Sovereign immunity is appropriate if the named defendant is an "arm of the state." *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). Courts utilize a three-factor test to determine whether a defendant is an arm of the state entitled to sovereign immunity: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *Fitchik*, 873 F.2d at 659. In applying this three-factor test, the Third Circuit noted that the factors are not weighed equally. *Id.*

It is the first inquiry—whether any judgment would be paid from the state treasury—that is the most important question and generally proves dispositive. *Id.*

Here, the State has not consented to suit in federal court and must be dismissed. Further, it is well-established that DHS is a state agency protected by the Eleventh Amendment. *See Fladger v. Trenton Psychiatric E. 2 Treatment Team*, Nos. 12-5982, 12-6419, 2013 WL 3271018, at *7 (D.N.J. June 27, 2013). Applying the test contained within *Fitchik*, any potential payment of a judgment resulting from this suit would come from the state treasury. Thus, the State is the real party in interest where Plaintiff names DHS as a defendant, and Eleventh Amendment immunity applies. Additionally, Plaintiff's claims against Sexton in his official capacity are for damages, which the Eleventh Amendment prohibits, as opposed to prospective injunctive relief. For these reasons, Defendants' Motion for Summary Judgment is granted as to the State, DHS, and Sexton, in his official capacity, and all Plaintiff's counts are dismissed as to these defendants.

### B. Count One: False Arrest, False Charges,[10] and Illegal Imprisonment

As to Count One against Sexton in his individual capacity, the Court agrees with Defendants that *Heck v. Humphrey* applies, but only to a limited extent. Count One arises from Sexton charging Plaintiff with: (1) failure to obey a stop sign; (2) obstruction of the administration of law; (3) improperly tinted windows; and (4) resisting arrest. The Court finds that the rule in *Heck* requires dismissal of charges (1) and (2), but not (3) and (4). As to charge (3), the Court finds that Defendants have established probable cause and the allegation should be dismissed. Count One, therefore, survives summary judgment only as to charge (4).

---

[10] While the Complaint pleads a "false charge" claim, the parties treat the claim as a malicious prosecution claim in their submissions. (*See* Defs.' Moving Br. 14-22; Pl.'s Opp'n Br. 9-10.)

11

The United States Supreme Court in *Heck* held that: "civil tort actions[, such as Section 1983 damages actions,] are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . [if they] necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as [with] actions for malicious prosecution." 512 U.S. 477, 486 (1994). The exception is where a plaintiff proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487.

First, it is undisputed that Plaintiff was convicted of failure to obey a stop sign and obstruction of the administration of law. (Defs.' SUMF ¶¶ 31-33.) Plaintiff's False Arrest, False Charges, and False Imprisonment claims clearly implicate the invalidity of these convictions because Plaintiff must prove his innocence as to these specific charges. The Court, therefore, must dismiss Count One as to these allegations.

It is also undisputed that Sexton charged Plaintiff for having tinted windows without medical authorization, and for resisting arrest. (*Id.* ¶ 31.) Plaintiff, however, was not convicted of the tinted windows charge before the Municipal Court, and, on Plaintiff's appeal, the Law Division later found Plaintiff not guilty of resisting arrest. (*Id.* ¶¶ 32-33.) The rule under *Heck*, therefore, does not require dismissal of Plaintiff's False Arrest, False Charges, and False Imprisonment claims as they relate to the tinted windows and resisting arrest charges.

As to Plaintiff's claims arising from being charged with having improperly tinted windows, however, it is undisputed that Plaintiff's vehicle had tinted windows. (*Id.* ¶ 3.) Given that the lack of probable cause is a prima facie element for false arrest and false charge claims under both state

12

and federal law,[11] the Court finds the fact that Plaintiff's windows were tinted constitutes probable cause and dismisses Count One as to the tinted windows charge. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (requiring lack of probable cause for false arrest action); *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (requiring lack of probable cause for malicious prosecution action); *Penwag Prop. Co., Inc. v. Landau*, 388 A.2d 1265, 1266 (N.J. 1978) (requiring lack of probable cause for malicious prosecution or malicious use of process claims under state law); *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1154 (N.J. 2000) ("[P]robable cause is an absolute defense to . . . false arrest, false imprisonment, and malicious prosecution claims [under New Jersey law].").

As to Plaintiff's charge for resisting arrest, the Court finds material facts to be in genuine dispute. The only factual allegation that Defendants set forth in support of summary judgment on this issue is that: "[P]laintiff got out of his vehicle to make a phone call," and that "Sexton got out of his police car and went to [P]laintiff, and there was an interaction between the two of them that resulted in . . . Sexton using Oleoresin Capsicum ('OC Spray') on [P]laintiff." (Defs.' SUMF ¶¶ 16-17.) Assuming that these facts establish probable cause for resisting arrest, Plaintiff genuinely disputes these facts by claiming he complied with Sexton's orders. (Pl.'s SMFD ¶ 7.) Moreover, even absent a dispute regarding these facts, when viewed in the light most favorable to Plaintiff, Defendants have not established probable cause. The Court, therefore, denies Defendants' Motion for Summary Judgment as to Sexton, in his individual capacity, on the sole issue of Plaintiff's resisting arrest charge. The Court otherwise grants Defendants' Motion to Dismiss as to Count One.

---

[11] Plaintiff never clarifies whether Count One arises under state or federal law, but Defendants address Count One on both state and federal law.

### C. New Jersey Tort Claims Act

As to the state law claim that survives summary judgment under Count One, the Court finds that the New Jersey Tort Claims Act ("TCA") bars Plaintiff from pursuing damages for pain and suffering. The TCA states that "[n]o damages shall be awarded against a . . . public employee for pain and suffering resulting from any injury . . . [unless the plaintiff suffered] permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d). Here, Plaintiff offers no evidence or allegations of the requisite injuries to qualify for pain and suffering damages on his state law claims. Moreover, it is undisputed that "Plaintiff is not claiming that he currently has any physical problems as a result of the incident." (Defs.' SUMF ¶ 28.) The Court, therefore, grants summary judgment in favor of Defendants on the issue of pain and suffering damages arising from Plaintiff's state law claims against Sexton, in his individual capacity.

### D. Counts Two, Three, and Four: Section 1983, Excessive Force & Selective Enforcement

As Defendants note, Counts Three, Four, and Five are difficult to distinguish as they each contain Section 1983 allegations referencing excessive force and selective enforcement. The Court therefore, treats these three Counts as two distinct claims—excessive force and selective enforcement—and addresses each claim accordingly.

With regard to Plaintiff's Selective Enforcement claims, the Court agrees with Defendants. A selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment can arise under two theories: (1) "a traditional theory, which protects a plaintiff from discriminatory treatment based on membership in a protected class"; and (2) "a 'class of one' theory by showing that a state actor treated him differently from similarly situated individuals without a rational basis for the different treatment." *Patterson v. Strippoli*, 639 F. App'x 137, 142

14

(3d Cir. 2016) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010). "Both theories require a showing that similarly situated people were treated differently." *Patterson*, 636 F. App'x at 142.

Here, Defendants correctly argue that Plaintiff has not asserted any facts as to Sexton's treatment of similarly situated people. (Defs.' Moving Br. 35-36.) Plaintiff's SMFD is devoid of any facts pertaining to similarly situated people, and alleges merely that, on one previous occasion, Sexton made a comment suggestive of racial prejudice. (Pl.'s SMFD ¶ 3.) The Court, therefore, grants summary judgment in favor of Defendants and dismisses all counts as they relate to selective enforcement.

As to Plaintiff's excessive force claim, the Court "must consider whether the officer's use of force was objectively reasonable under the circumstances regardless of the officer's underlying motives or intentions." *Boroff v. Lynn*, 643 F. App'x 130, 132 (3d Cir. 2016) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). When applying this standard, the Court must:

> determine whether a particular use of force is reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and . . . take into consideration that "police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation."

*Id.* at 133 (quoting *Graham*, 490 U.S. at 396-97).

In support of their Motion, Defendants cite to Plaintiff's deposition for the proposition that Plaintiff exited his vehicle and walked toward Sexton, and that a subsequent interaction between Plaintiff and Sexton led to Sexton spraying Plaintiff. (*See* Def.'s Moving Br. 31.) Upon reviewing the deposition testimony cited by Defendants, the Court finds that Defendants oversimplified the precise factual sequence. Plaintiff testified that he exited the vehicle and proceeded to make a phone call to the hospital. (Defs.' Ex. A (Edwards Dep.) 81:6-82:18.) According to Plaintiff,

Sexton instructed him to "[s]top talking" and Plaintiff said, "What are you going to shoot me now, now you going to shoot me? . . . He didn't say a word. And he just reached up and the next thing you know my eyes were on fire." (*Id.* at 87:10-88:25.) As this is Defendants' Motion for Summary Judgment, the Court considers the facts in the light most favorable to Plaintiff; and Defendants' lack of specific factual assertions as to Sexton's objective justification for using the OC Spray on Plaintiff requires the Court to deny Defendants' Motion as to the excessive force claim.

### E.   Qualified Immunity

Because the Court already dismissed the remaining claims, the Court analyzes the application of qualified immunity only as to Plaintiff's claims of false arrest, false charges, and false imprisonment as to his resisting arrest charge, and Plaintiff's claim for excessive force. "Qualified immunity is an affirmative defense that shields government officials from liability for civil damages." *Conte v. Rios*, ___ F. App'x ___, Nos. 15-3360, 15-3301, 2016 WL 4073465, at *2 (3d Cir. Aug. 1, 2016). In deciding whether qualified immunity applies, the Court must consider two questions: "First, the constitutional question is 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right'[;] . . . Second, the qualified immunity question is 'whether the right at issue was "clearly established" at the time of a defendant's alleged misconduct.'" *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The first prong is a "factual question," which is appropriate for juries to decide, while the second prong should be decided by courts. *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).

Here, there is a genuine dispute of material fact with regard to the factual question. Plaintiff alleges that he complied with Sexton's orders and that he did not exhibit any threatening conduct toward Sexton. (Pl.'s SMFD ¶¶ 5-7.) Defendants, on the other hand, allege that an "interaction"

occurred between the parties that led to Sexton spraying Plaintiff. (Defs.' SUMF ¶ 17.) In light of the dispute of fact, Defendants have failed to establish the affirmative defense of qualified immunity at the summary judgment stage, and the Court need not analyze the second qualified immunity prong. *See Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009) (noting that the courts should have the discretion to omit analysis of the legal prong of qualified immunity where the "inquiry involves a reasonableness question which is highly idiosyncratic and heavily dependent on the facts").

## V. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** as to Defendants the State of New Jersey, New Jersey Department of Human Services, and Sergeant Stephen Sexton, in his official capacity, on all counts. Further, Defendants' Motion for Summary Judgment is **GRANTED** as to pain and suffering damages arising from Plaintiff's state law claims against Sexton, in his individual capacity, under Count One. Defendants' Motion for Summary Judgment is **DENIED** as to Sexton, in his individual capacity, as to: Plaintiff's false arrest, false charge, and false imprisonment claims arising solely from Sexton charging Plaintiff with resisting arrest; and as to Plaintiff's Section 1983 excessive force claim. To the extent that any counts remain against Sexton, in his individual capacity, Defendants' Motion for Summary Judgment is **GRANTED** as to Sexton, in his individual capacity, on all other counts. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2016